ENTERED
CLERK, U.S. DISTRICT COURT

JUN 2 8 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

JUN 2 7 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| APPLIED INFORMATION SCIENCES CORP., a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> EBAY, INC., a Delaware Corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. CV 04-274 DT (MANx) <br><br> ORDER AND OPINION **GRANTING** DEFENDANT EBAY, INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT <br><br> ORDER AND OPINION **DENYING** PLAINTIFF APPLIED INFORMATION SCIENCES CORP.'S MOTION FOR SUMMARY JUDGMENT |

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

## I.     BACKGROUND

Plaintiff Applied Information Sciences Corp. ("Plaintiff") brings this action against eBay, Inc. ("eBay" or "Defendant" or "Defendant eBay") for:

(1)     Trademark Infringement (15 U.S.C. §§ 1051 et seq.); and

(2)     Unfair Business Practices (California Business & Professions Code §§ 17200 et seq.).

### A.     Factual Summary

The following facts are alleged in the Complaint:

1    Plaintiff is the owner of a registered trademark for "SmartSearch," a

2    compilation of computer software and instruction manuals, sold together, which

3    allow the user to retrieve internet-based information in the fields of agriculture and

4    nutrition, books, computers and electronics, education, law, medicine and other

5    sciences, and the humanities. (Complaint, ¶ 8). Plaintiff holds the United States

6    Trademark for "SmartSearch," Registration No. 2,129,696. (Id.). Plaintiff had

7    used the mark widely in commerce since 1992, but did not register it until January

8    20, 1998. (Id.). Plaintiff also markets a sales tool called "SmartSearch" for book

9    vendors who sell books to school libraries. (Id. at ¶ 9).

10    Defendant eBay is a commercial website that provides an "auction"

11    service to Internet users worldwide to buy and sell all types of merchandise. (Id.

12    at ¶ 10). Defendant profits by charging sellers listing fees, which vary according

13    to the asking price of the item to be auctioned. (Id.).

14    Defendant eBay, without consent of Plaintiff, publishes the term

15    "SmartSearch" on its website home page. (Id. at ¶ 11). The term is prominently

16    displayed at the top portion of the website home page under a section called,

17    "What are you looking for?" (Id. at ¶ 12). A click onto "SmartSearch" allows the

18    user to search key words or item numbers for products sold through EBay. (Id. at

19    ¶ 13). The term's displayed throughout Defendant's website is an integral

20    component of Defendant eBay's search engine. (Id.). Plaintiff has demanded that

21    Defendant cease using the term "SmartSearch." (Id. at ¶ 14). EBay refuses. (Id.).

22    Unless otherwise indicated, the following facts are uncontroverted:[1]

23

24    [1] The following facts are taken from Plaintiff's Statement of Uncontroverted
Facts And Conclusions of Law ("Plaintiff's UF") and Defendant EBAY INC.'s

25    Separate Statement of Controverted and Uncontroverted Facts and Conclusions of

26    Law ("Defendant's UF"). Although Defendant was required to file a "Statement

27    of Genuine Issues of Material Fact" in opposition to Plaintiff's UF pursuant to

28    2

Plaintiff states that it is the owner of the Trademark "SmartSearch," Registration No. 2,129,696, issued by the United States Patent and Trademark Office on January 20, 1998. (Plaintiff's UF at ¶ 1). Defendant disputes this fact insofar as Plaintiff's registration does not cover goods outside those listed in the registration, and that the registration issued to Plaintiff is invalid by virtue of Plaintiff's knowingly submitting a false declaration, executed by Plaintiff's president Norman Mazer,[2] to the Trademark Office seeking incontestability status for the alleged "SmartSearch" registration. (Defendant's UF at ¶ 1). According to Plaintiff, it has used the name "SmartSearch" widely in commerce since 1992, and that Defendant began using Plaintiff's registered trademark in or about the first quarter of 2000. (Plaintiff's UF at ¶¶ 2, 3). The use by eBay of the trademark "Smart Search" was without consent.[3] (Plaintiff's UF at ¶ 4). However, Defendant eBay states that consent is irrelevant because eBay's use of the Mark was outside the scope of Plaintiff's claimed registration and "SmartSearch" did not acquire secondary meaning in eBay's market prior to 2000. (Plaintiff's UF at ¶ 4).

---

Local Rule 56-2, Defendant did not do so. Instead, Defendant filed a statement of uncontroverted facts whereby Defendant either conceded or disputed facts Plaintiff maintained were without controversy. By doing so, Defendant eBay complied with the spirit and purpose of Local Rule 56-2. Therefore, the Court, in its discretion, determines that Defendant has satisfied Local Rule 56-2.

[2] Although Defendant eBay continually refers to a "Norman Mazur" in its papers, the Court recognizes that the correct person's name is spelled "Norman Mazer."

[3] Defendant eBay's attempt to distinguish the term "SmartSearch" from "Smart Search" is unpersuasive. For purposes of this action, the Court finds no distinction between the term "SmartSearch" and "Smart Search." Both terms are also herein referred to in this Order as the "Mark."

3

Defendant eBay continued to use Plaintiff's registered trademark "SmartSearch" despite having received notice of infringement and a request from Plaintiff to cease and desist using the Mark. (Plaintiff's UF at ¶ 5). According to Plaintiff, Defendant's use of the Mark was willful and deliberate, and would tend to cause, and has caused, confusion among the general public as to the ownership of the mark. (Plaintiff's UF at ¶¶ 6, 7). Plaintiff also states that it has been damaged by eBay's unauthorized use of the Mark. (Plaintiff's UF at ¶ 8). Defendant states that Plaintiff fails to show, beyond conclusory remarks, that Defendant's use of Plaintiff's Mark was willful or deliberate, that Defendant's use confuses the general public as to the ownership of the Mark, and that Plaintiff has been damaged. (Defendant's UF at ¶¶ 6-8).

Unless otherwise indicated, the following facts, which are made in support of Defendant eBay's cross-motion for summary judgment, are undisputed:[4]

Founded in 1995, eBay is a web-based service providing registered users with a trading platform to buy and sell items through auction-style and fixed-priced transaction formats. (Defendant's UF at ¶ 1). Defendant ebay is not a

---

[4] Plaintiff filed an untimely Statement of Genuine Issues In Opposition to Defendant's eBay's Cross Motion for Summary Judgment ("GI" or "Genuine Issues") on June 23, 2005 at 1:44 PM, eleven (11) days after of the June 13, 2005 deadline, and one and a half (1½) Court days before the June 27, 2005 hearing date. Plaintiff's excessive tardiness in filing the proper papers before the hearing date is unsettling because it creates waste of judicial resources and undue time pressures by forcing the Court to assess and incorporate facts and legal analysis that should have been presented in a timely manner pursuant to Court rules. Plaintiff's untimeliness in filing is not only an affront to the Court, but unfair to opposing counsel who has little to no time to respond. Although this Court may properly strike Plaintiff's late filed documents from the record, the Court, in its discretion, considers Plaintiff's papers in order to arrive at a disposition of this action based upon its merits.

vendor of software, nor does its e-commerce trading service compete in the market for software. (Defendant's UF at ¶ 2). Prior to 2000, the words "Advanced Search" appeared in small, discrete letting on eBay's home page as a label for a hyperlink. (Defendant's UF at ¶ 3). When one clicked the link, it took the user to a different eBay web page with additional search options. (Defendant's UF at ¶ 3).

In the first quarter of 2000, eBay identified the link as "Smart Search." (Defendant's UF at ¶ 4). eBay chose this label because it believed that users, particularly those unfamiliar with web-based services, would find the language more welcoming and understandable, and because "smart" is a common term to describe an easy-to-use interface. (Defendant's UF at ¶ 4). When eBay decided to label its hyperlink "Smart Search," it was unaware of Plaintiff or the names of its claimed products, and its decision to use the words to label the hyperlink was unrelated to Plaintiff and any of its products or services. (Defendant's UF at ¶ 5).

When the name of the hyperlink was changed from "Advanced Search" to "Smart Search," no other aspects of the link were changed and it continued to function solely to navigate from one page on eBay's website to another. (Defendant's UF at ¶ 6). At no time did the hyperlink labeled "Smart Search" have any search functionality; no search operation, or any part thereof, occurred by a user's clicking on the hyperlink.[5] (Defendant's UF at ¶ 7).

Defendant eBay did not use "Smart Search" as a name for any software product. (Defendant's UF at ¶ 8). Although eBay states that it did not charge users for clicking on the hyperlink and obtained no revenue from it,

---

[5] Although Plaintiff disputes this fact, the Court is unclear as to the grounds for which to find Defendant's statement contested.

1   Plaintiffs disputes this, stating that eBay earns money, or "feature fees" by users

2   who pay to place their items in premium locations that are directly linked to the

3   results of inquiries on search engines. (Defendant's UF at ¶ 9, Plaintiff's GI at ¶

4   9).   In 2004, for reasons unrelated to this case, eBay labeled the link "Advanced

5   Search" and eliminated the words "Smart Search." (Defendant's UF at ¶ 10).  The

6   words "Smart Search" are no longer used by eBay on its website. (Defendant's

7   UF at ¶ 11).  During the time the words "Smart Search" appeared on eBay's home

8   page, it was always accompanied by the famous EBAY mark and design.

9   (Defendant's UF at ¶ 12).

10         During the time the words "Smart Search" appeared on eBay's home

11   page to the present date, the typical method for users to access the eBay home

12   page was to type www.ebay.com into the address bar of a web browser application

13   or to click on eBay's famous design mark when used as an eBay-sponsored

14   hyperlink on other websites. (Defendant's UF at ¶ 13).  As of December 31, 1998,

15   eBay had over 2.1 million registered users, and as of December 31, 1999, eBay

16   had over 10 million registered users. (Defendant's UF at ¶ 14).

17         Plaintiff, a vendor of specialized software, is operated by its president

18   and sole employee, Norman Mazer ("Mr. Mazer"), out of his home. (Defendant's

19   UF at ¶ 15).  In the mid-1980s, Mr. Mazer developed software called

20   "SearchWare," that facilitated retrieval of information from the proprietary

21   databases of media company then known as Dialog. (Defendant's UF at ¶ 16).

22         In or about 1995, Plaintiff also sold a version of the software,

23   available on a floppy disk or as a download, for Compuserve subscribers who

24   would use the product to facilitate retrieval of information from proprietary Dialog

25   databases available throughout Compuserve for a fee. (Defendant's UF at ¶ 17).

26   Defendant eBay states that from at least January 1999 to 2004, Plaintiff did not

27

28                                         6

sell any product consisting of "computer software and instruction manuals sold together which allow the user to retrieve information from on-line services." (Defendant's UF at ¶ 19). Plaintiff disputes this, stating that it marketed "SmartSearch" products continuously from 1995 to 2004, all of which contained software and instruction manuals. (Defendant's UF at ¶ 19).

Defendant states that after 1998, Plaintiff only had one software product that allowed users to retrieve information from on-line services, the "SmartSearch" web module, which was not first sold until 2004. (Defendant's UF at ¶ 20). In dispute, Plaintiff states that the SmartSearch web module was sold to and used by Mook & Blanchard from 1998 to 2002, along with other "SmartSearch" products, and that the "SmartSearch" web module was integrated into Mook & Blanchard's website, which carried the banner "powered by SmartSearch." (Plaintiff's UF at ¶ 20). Plaintiff charges $3000.00 for a single user license for the "SmartSearch" module, which is used to evaluate education book inventories and which Plaintiff customizes for the purchaser. (Defendant's UF at ¶ 21). Plaintiff states that the $3,000.00 license was for a scaled-down version of the module, and that the actual pricing for the various "SmartSearch" products varies. (Plaintiff's UF at ¶ 21). Defendant states that the "SmartSearch" module has been purchased by only two companies and Plaintiff marketed the module to each by directly submitting a written proposal to them. (Defendant's UF at ¶ 22). However, Plaintiff asserts that the "SmartSearch" module "has been purchased by many companies[,]" and submits an "Itemized Sales by Item" from "January 1, 1995 through April 22, 2004" to support this fact. (Plaintiff's UF at ¶ 22).

Starting in approximately 1997, Plaintiff sold a specialized software product, also called "SmartSearch," that companies who distributed books utilized

as a sales tool to sell books to school libraries. (Defendant's UF at ¶ 23). According to Defendant Plaintiff's "SmartSearch" tool did not allow users to retrieve information on-line, but instead was an "offline" program that facilitated searching book inventory databases downloaded into the program. (Defendant's UF at ¶ 24). Plaintiff disputes this fact, asserting that "SmartSearch" has always provided for both on-line and off-line information retrieval, depending upon the software purchased and the user's application needs. (Plaintiff's UF at ¶ 24). In addition, Plaintiff's "Focus On Books" program did not allow users to retrieve information from on-line services, but could only search local databases on the user's computer. (Defendant's UF at ¶ 25). However, according to Plaintiff, other versions of "SmartSearch" products were geared toward retrieving information on-line. (Plaintiff's UF at ¶ 25). Plaintiff has never conducted business in eBay's market, nor has it taken steps or made plans to do so. (Defendant's UF at ¶ 26).

On April 28, 1994, Plaintiff applied to register "SmartSearch" with the Trademark Office. (Plaintiff's GI at ¶ 27). On January 20, 1998, the Trademark Office issued Plaintiff a registration for "SmartSearch" for use on "[c]omputer software and instruction manuals sold together which allow the user to retrieve information from on-line services via phone line in the fields of agriculture and nutrition, books, chemistry, computers and electronics, education, law, medicine and biosciences, news, science and technology, social sciences and humanities in Class 9." (Defendant's UF at ¶ 28).

On December 15, 2003, Plaintiff submitted to the Trademark Office a declaration seeking incontestability status for the registration, titled "Combined Declaration of Use and Incontestability," executed by Plaintiff's president, Mr. Mazer. (Defendant's UF at ¶ 29). Defendant asserts that Mr. Mazer's sworn statements in the Combined Declaration of Use and Incontestability ("Declaration

of Use") were false. (Defendant's UF at ¶ 30). Mr. Mazer's Declaration of Use states that the "SmartSearch" mark was continuously used in commerce for five consecutive years after the date of registration, and was still in use in commerce on or in connection with the goods and/or services listed in the registration. (Defendant's UF at ¶ 30). In response, Plaintiff asserts that its sworn statement "is truthful in every respect" and that the "SmartSearch" trademark has "been used in conformity with the Trademark registration" since 1992." (Plaintiff's UF at ¶ 30). The specimen accompanying the Combined Declaration of Use and Incontestability was a copy of the "SmartSearch Demo Version 3.0" sales tool on a CD-Rom disk. (Defendant's UF at ¶ 31). The "SmartSearch Demo Version 3.0" has never been "sold" and was not the type of goods described in Plaintiff's registration for the "SmartSearch" mark. (Defendant's UF at ¶ 32).

Defendant states that Plaintiff has no evidence that any user of eBay's service has ever associated the words "Smart Search" appearing on eBay's website with Plaintiff. (Defendant's UF at ¶ 35). However, Plaintiff disputes this, and offers the deposition testimony of Thomas Delaney, owner of Delaney Educational Services, who testified that he was confused as to the source of Plaintiff's "SmartSearch" product after viewing and using eBay's Smart Search function on eBay's website. (Plaintiff's UF at ¶ 35). Plaintiff has no survey evidence showing that its claimed mark acquired secondary meaning in eBay's market prior to 2000. (Defendant's UF at ¶ 36). Defendant eBay states that Plaintiff has no evidence of itemized expenditures attributable to the advertising and promotion of its products prior to 2000, (Defendant's UF at ¶ 37), which Plaintiff disputes, stating that "[f]rom 1995 through 1999, [Plaintiff] AIS spent $244,734.00 advertising "SmartSearch products, including $35,938.50 for CompuServe print and on-line advertising." (Plaintiff's UF at ¶ 37). None of Plaintiff's software has

ever allowed users to search any portion of eBay's website. (Defendant's UF at ¶ 38).

At least 37 organizations–including Microsoft, NASA, the U.S. military and AT&T–have used the term "SmartSearch" or "Smart Search" for searches. (Defendant's UF at ¶ 39). Plaintiff knew of its alleged claims against eBay by December 2001 at the latest, but did not sue eBay until January 2004. (Defendant's UF at ¶ 40).

## B.    Procedural Summary

On January 15, 2004, Plaintiff filed the Complaint.

On March 11, 2004, Defendant filed the Answer.

On September 28, 2004, Defendant filed a Notice of Motion and Motion for Order Continuing Pretrial Deadlines and Trial Date, which was granted. Scheduling deadlines are as follows: Discovery Cutoff–April 15, 2005; Final Pretrial Conference–July 18, 2005; and Jury Trial–September 13, 2005. The Final Pretrial Conference was later continued to August 8, 2005.

On March 2, 2005, Plaintiff filed a Motion for Summary Judgment, which is before the Court.

On June 6, 2005, Defendant filed a Combined Opposition to Motion for Summary Judgment and Cross-Motion for Summary Judgment or, in the alternative, for Partial Summary Judgment, which is before the Court.

On June 10, 2005, Plaintiff filed an Ex Parte Application for Order Striking Defendant's Untimely Cross-Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, which was denied.

## II.   DISCUSSION

### A.    Standard

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56©). The moving party has the

burden of demonstrating the absence of a genuine issue of fact for trial. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).

If the moving party satisfies the burden, the party opposing the motion must set

forth specific facts showing that there remains a genuine issue for trial. See id.;

Fed. R. Civ. P. 56(e).

A non-moving party who bears the burden of proof at trial to an

element essential to its case must make a showing sufficient to establish a genuine

dispute of fact with respect to the existence of that element of the case or be

subject to summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322,

106 S. Ct. 2548, 2552 (1986). Such an issue of fact is a genuine issue if it

reasonably can be resolved in favor of either party. See Anderson, 477 U.S. at

250-51, 106 S. Ct. at 2511. The non-movant's burden to demonstrate a genuine

issue of material fact increases when the factual context renders her claim

implausible. See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475

U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). Thus, mere disagreement or the bald

assertion that a genuine issue of material fact exists no longer precludes the use of

summary judgment. See Harper v. Wallingford, 877 F.2d 728 (9th Cir. 1989); see

also Cal. Architectural Bldg/ Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d

1466, 1468 (9th Cir. 1987).

If the moving party seeks summary judgment on a claim or defense on

which it bears the burden of proof at trial, it must satisfy its burden by showing

affirmative, admissible evidence. Arpin v. Santa Clara Valley Transp. Auth., 261

F.3d 912, 922 (9th Cir. 2001) ("Conclusory allegations unsupported by factual

data are insufficient to defeat . . . summary judgment. . . . [A] party bears his

1   burden of proof [by] providing specific facts to show [that summary judgment is

2   inappropriate.]").   Unauthenticated documents cannot be considered on a motion

3   for summary judgment.  See Hal Roach Studios v. Richard Feiner and Co., 896

4   F.2d 1542, 1550 (9th Cir. 1990).

5          On a motion for summary judgment, admissible declarations or

6   affidavits must be based on personal knowledge, must set forth facts that would be

7   admissible evidence at trial, and must show that the declarant or affiant is

8   competent to testify as to the facts at issue.  See Fed. R. Civ. P. 56(e).

9   Declarations on "information and belief" are inappropriate to demonstrate a

10  genuine issue of fact.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

11  **B.     Analysis**

12         Before the Court are the following two motions: (1) Plaintiff's

13  Motion for Summary Judgment ("Motion for Summary Judgment"); and (2)

14  Defendant's Cross-Motion for Summary Judgment, or in the Alternative, Partial

15  Summary Judgment ("Cross-Motion for Summary Judgment").[6]  The Court

16  determines each motion, beginning with Defendant's Cross-Motion for Summary

17  Judgment.

18         Defendant moves for summary judgment and/or partial summary

19  judgment on the following grounds:

20

21  _____

22         [6] Defendant's Motion for Summary Judgment is entitled "Defendant eBay
    Inc.'s Combined Opposition to Plaintiff's Motion for Summary Judgment and its
23  Notice of Cross-Motion for Summary Judgment, or, in the Alternative, for Partial
    Summary Judgment" (hereafter, "Opposition/Cross-Motion" or "Cross-Motion for
24  Summary Judgment").  Defendant eBay's Opposition/Cross-Motion violates Local
    Rules governing page limitation, typeface size and spacing requirements.  Local
25  Rules 11-6, 11-3.1.1, and 11-3.2.  The Court, concerned with Defendant's
    violations, warns the parties to comply with Court rules.  Future failure to follow
26  Court rules may result in sanctions.

27

28                              12

[First,] Plaintiff does not and cannot establish any protectable trademark rights in its alleged "SmartSearch" mark and therefore cannot establish an essential element of its claims. [Second,] . . . plaintiff does not and cannot establish any entitlement to relief (1) as a consequence of plaintiff's failure to produce admissible evidence of damages or likelihood of confusion and (2) as a further consequence of plaintiff's failure to comply with its obligations under <u>Federal Rule of Civil Procedure</u> 26(a)(1)(c) to disclose claimed damages, including the computation thereof. . . .

In the alternative, eBay is entitled to partial summary judgment and/or orders precluding plaintiff from introducing the alleged registration and/or evidence of damages at trial [for the following reasons:  First,] Plaintiff[] submi[tted] . . . a knowingly false incontestability declaration to the Trademark Office for its "SmartSearch" registration[, thereby] render[ing] the registration invalid as a matter of law[.  Second,] . . . plaintiff[] fail[ed] to provide damages disclosures required by <u>Federal Rule of Civil Procedure</u> 26(a)(1)(c)[, thereby] mandat[ing] the preclusion of any damages evidence under <u>Federal Rule of Civil Procedure</u> 37(c)(1).  Further, eBay is entitled to partial summary judgment and/or orders of preclusion as to plaintiff's claim for relief under Bus.

13

1  & Prof. Code § 17200 in that plaintiff's demands for

2  profits disgorgement and punitive damages are

3  unavailable as a matter of law.

4  (Defendant eBay's Opposition to Plaintiff's Motion and Cross Motion for

5  Summary Judgment, or, in the Alternative, for Partial Summary Judgment.

6  ("Opposition/Cross-Motion") at 2:12-3:14).

7  As an initial matter, the Court notes that Defendant's Cross-Motion

8  for Summary Judgment is unopposed. On June 23, 2005, eleven (11) days after

9  the June 13, 2005 deadline for filing opposition papers, Plaintiff untimely filed the

10  following three documents in opposition to Defendant's Cross-Motion for

11  Summary Judgment: (1) a Statement of Genuine Issues; (2) the Declaration of

12  Robert L. Esensten; and (3) the Declaration of Norman Mazer. This Court did not

13  receive an "Opposition" with points and authorities as contemplated by Local Rule

14  7-9. Although the Court may consider Plaintiff's failure to file an Opposition as

15  permission to grant Defendant's Cross-Motion for Summary Judgment, the Court,

16  in its discretion and in the interests of justice, determines Defendant's motion on

17  its merits. In doing so, the Court finds as a matter of law that Defendant is entitled

18  to summary judgment for the reasons stated below.

19  **1.    Defendant eBay's Actions Do Not Constitute Trademark**

20  **Infringement Or Unfair Competition**

21  Plaintiff alleges that Defendant eBay engaged in acts of trademark

22  infringement under Section 43(a) of the Trademark Act, 15 U.S.C. §§ 1051 et seq.

23  (specifically §§ 1114(1)(a) and 1125(a)(1)(a)), and statutory unfair competition

24  under California Business and Professions Code §§ 17200 et seq.[7] To succeed on

25

26  ──────────

27  [7] The analysis for infringement and unfair competition is essentially the
same under both named sections of the Trademark Act and California law. Int'l

28  14

1  either its trademark infringement or unfair competition claims, Plaintiff must show

2  that it holds a valid, protectable mark and that Defendants are using a mark that is

3  confusingly similar to Plaintiff's Mark.  Levi Strauss & Co. v. Blue Bell, Inc., 778

4  F.2d 1352, 1354 (9th Cir. 1985) (holding that the essential elements of a

5  trademark infringement claim are (1) plaintiff's ownership of a protectable

6  trademark and (2) the likelihood of consumer confusion as to the source or

7  affiliation of the parties' respective goods or services).  In all cases, infringement

8  must be proven affirmatively, and the plaintiff bears the burden of proof on each

9  element.  Id.

10           *a.*    *Although Plaintiff's "SmartSearch" Mark Appears Valid*

11                 *And Protectable, Defendant's Use Of "SmartSearch"*

12                 *Does Not Infringe Plaintiff's Trademark Rights Because*

13                 *Defendant's Use Of The Mark Does Not Fall Within*

14                 *That Described In The Trademark Registration*

15         To prevail on a federal trademark infringement claim, the plaintiff

16  must establish ownership of a valid protectable trademark.  Transgo, Inc. v. AJAC

17  Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir. 1985) ("The threshold

18  issue in any action for trademark infringement is whether the words used by a

19  manufacturer in connection with his product are entitled to protection.").  For the

20  mark to be protectable, it must distinguish one's goods or services from the goods

21  and services of others.  See 15 U.S.C. § 1052.  A mark is "distinctive and capable

22  _____

23  Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 916 (9th Cir. 1980)

24  (stating that California law of unfair competition is "substantially congruent" with
    the Lanham Act).  Accordingly, where a federal trademark infringement claim

25  fails for lack of secondary meaning, the unfair competition claim, which also

26  depends on a showing of secondary meaning, fails as well. Levi Strauss & Co. v.
    Blue Bell, Inc., 778 F.2d 1352, 1362 (9th Cir. 1985); Allied Artists Pictures Corp.

27  v. Friedman, 68 Cal. App. 127, 134-36 (1977).

28                                 15

of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992).

According to the Ninth Circuit, "registration of the mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [Plaintiff's] exclusive right to use the mark on the goods and services specified in the registration." Brookfield Communications., Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1047 (9th Cir. 1999). After registering with the Patent and Trademark office the "registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence." Sengoku Works Ltd. v. RMC Intern., Ltd., 96 F.3d 1217 (9th Cir. 1996) (citations omitted).

Here, Plaintiff relies on its registration as its only evidence for trademark protection. Plaintiff argues that because its registration is incontestable, the distinctiveness of its mark is automatically sufficient to confer trademark rights in "SmartSearch." However, Plaintiff is incorrect. As Defendant eBay points out, the rights and presumptions afforded to registered marks are limited to the goods identified in the registration. Levi Strauss, 778 F.2d at 1354. In fact, the Lanham Act expressly restricts the presumptions to uses of the mark "on or in connection with the goods or services specified in the registration." 15 U.S.C. §§ 1057(b); see also 15 U.S.C. §§ 1065, 1115.

In Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352 (9th Cir. 1985), the Court of Appeals for the Ninth Circuit sitting en banc refused to apply the statutory presumption, even though the plaintiff federally registered its trademark. Levi Strauss, 778 F.2d at 1354. In Levi Strauss, the plaintiff's registration designated tabs on pants, whereas the alleged infringer placed similar

1  tabs on shirt pockets. <u>Id.</u> In finding no infringement, the <u>Levi Strauss</u> Court

2  explicitly stated that, "[the plaintiff] cannot simply rely on the federal registration

3  of certain tabs, most notably those on pants, to establish a protected interest in a

4  pocket tab on garments generally, because registration constitutes prima facie

5  evidence of a protected interest **with respect to the goods specified in the**

6  **registration only**." <u>Levi Strauss</u>, 778 F.2d at 1354 (emphasis added); <u>see also</u>

7  <u>Chrysler Corp. v. Vanzant</u>, 44 F. Supp. 2d 1062, 1070 n.7 (C.D. Cal. 1999)

8  ("[A]ny presumptions accompanying a federal trademark registration are

9  applicable only when the registration holder is suing someone using the mark on

10  goods covered by the registration."); 3 J. Thomas McCarthy on Trademarks and

11  Unfair Competition § 19:48 at 10-149 to 19-150 ("the prima facie and

12  incontestable provisions of the Lanham Act apply only to the goods or services

13  specified in the registration."); <u>accord</u> <u>Mushroom Makers v. R. G. Barry Corp.</u>,

14  580 F.2d 44, 48 (2d Cir. 1978) ("even if a mark is registered, the presumptive right

15  to use it extends only so far as the goods or services noted in the registration

16  certificate."); <u>Avon Shoe v. David Crystal, Inc.</u>, 279 F.2d 607, 613 n.7 (2d Cir.

17  1960) (incontestable registration for mark for shoes carried no exclusive right to

18  use on sportswear).

19           In the instant case, the goods specified in Plaintiff's registration are

20  "[c]omputer software and instruction manuals sold together which allow the user

21  to retrieve information from on-line services via phone line" in various "fields."  It

22  is undisputed that Defendant eBay has never used Plaintiff's "SmartSearch" mark

23  or a substantially similar mark on goods described in the registration.  Defendant

24  eBay's use of the mark was on a hyperlink for its web-based trading service, and

25  not for "computer software and instruction manuals sold together."  Therefore,

26  Plaintiff cannot rely on its registration to prove distinctiveness.  Instead, Plaintiff

27

28                                                17

1  must prove secondary meaning, which it fails to do for the reasons discussed

2  below.

3          *b.*    *Plaintiff Does Not Demonstrate Secondary Meaning*

4              Where presumptions from registration are inapplicable, to establish

5  protectable rights, a plaintiff must prove that the alleged mark had acquired

6  secondary meaning in the defendant's market **before** the allegedly infringing

7  conduct began. Levi Strauss, 778 F.2d at 1358; Chrysler, 44 F. Supp. 2d at 1077

8  (Ninth Circuit precedent "teaches without equivocation that [the plaintiff] must

9  establish that the mark in question had achieved secondary meaning in the relevant

10  market prior to [the defendant's] first use of the mark."); see Braun, Inc. v.

11  Dynamics Corp. of Am., 975 F.2d 815, 826 (Fed. Cir. 1992) (an "infringement

12  [cause of action] fails if secondary meaning did not exist before the infringement

13  began."). Because it is uncontested that eBay first began its accused use of the

14  Mark in early 2000, Plaintiff must prove secondary meaning as of early 2000.

15              A trademark is said to be inherently distinctive where it is considered

16  (1) suggestive, (2) arbitrary, or (3) fanciful. See Two Pesos, Inc. v. Taco Cabana,

17  Inc., 505 U.S. 763, 768 (1992). Where the trade dress is be capable of identifying

18  products or services as coming from a specific source, it is considered inherently

19  distinctive. Id. Because Plaintiff only contends that its trademark "SmartSearch"

20  has acquired secondary meaning, this Court need not discuss whether Plaintiff's

21  trademark could be viewed as inherently distinctive.

22              "Secondary meaning can be established in many ways, including, but

23  not limited to, direct consumer testimony; survey evidence; exclusivity, manner,

24  and length of use of a mark; amount and manner of advertising; amount of sales

25  and number of customers; established place in the market; and proof of intentional

26  copying by the defendant." Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns,

27  Inc., 198 F.3d 1143, 1151 (9th Cir. 1999) (citing 2 J. Thomas McCarthy,

28                                        18

1 Trademarks and Unfair Competition § 15:30 (4th ed. 1997)); <u>Grupo Gigante S.A.</u>

2 <u>de C.V. v. Dallo & Co., Inc.</u>, 119 F. Supp. 2d 1083, 1091 (C.D. Cal. 2000). The

3 basic element of secondary meaning is the "mental association by a **substantial**

4 **segment** of consumers and potential consumers between the alleged mark and the

5 single source of the product." <u>Levi Strauss</u>, 778 F.2d at 1354 (emphasis added).

6 Secondary meaning exists only when, "in the minds of the public, the primary

7 significance of a [mark] is to identify the source of the product rather than the

8 product itself." <u>Wal-Mart Stores v. Samara Bros.</u>, 529 U.S. 205, 211 (2000).

9        To determine whether the Mark had secondary meaning before the

10 year 2000, the Court may consider (1) whether actual users of eBay associated the

11 Mark with Plaintiff, (2) the degree and manner of Plaintiff's promotion and

12 advertising of products featuring the alleged mark, and (3) the length, manner and

13 exclusivity of Plaintiff's use of the claimed mark. <u>Levi Strauss</u>, 778 F.2d at 1358.

14                     *(1)    Actual Association*

15        In the Ninth Circuit, surveys testing consumer recognition and

16 association are generally considered the most probative evidence of secondary

17 meaning. <u>Committee for Idaho's High Desert, Inc. v. Yost</u>, 92 F.3d 814, 822 (9th

18 Cir. 1996); 2 McCarthy § 15:42 at 15-65 to 15-66 ("An expert survey of

19 purchasers can provide the most persuasive evidence on secondary meaning.").

20 Plaintiff provides insufficient evidence, survey or an alternative source of proof,

21 that users of eBay associate the words "Smart Search" with Plaintiff. Mr. Mazer

22 admits that he knows of no eBay user who made an actual association between the

23 parties. (Deposition of Norman Mazer ("Mazer Depo.") at 267:16-267:25).

24        The Court notes, however, that attached to Plaintiff's late filed

25 Declaration of Robert L. Esensten ("Esensten Decl.") is the deposition testimony

26 of Thomas Delaney ("Delaney"), owner of Delaney Educational Services, who

27 contracted with Plaintiff for the use of Plaintiff's "SmartSearch" software, and

28                                    19

purports to have visited the eBay website "maybe more than a dozen times" to search for items on eBay. (Esensten Decl., Delaney Depo., Exh. 3 at 95:13-19). According to Robert L. Esensten, he was unable to distinguish between eBay's use of the term "Smart Search" and Plaintiff's use of the term "SmartSearch," and that eBay's use of "Smart Search" confused him as to the source of the Mark. (Esensten Decl., Videotaped Deposition of Thomas William Delaney ("Delaney Depo."), Exh. 3 at 124:9-128:2). Although the Delaney Depo. constitutes evidence of confusion, the Court does not find that the deposition testimony of a single user such as Delaney satisfies Plaintiff's burden of proof that a substantial segment of the relevant market associates Defendant with Plaintiff. This factor weighs heavily in favor of finding no secondary meaning.

### (2)    *Degree and Manner of Advertising*

In determining whether a plaintiff's advertising efforts establish secondary meaning, the Court "look[s] at the [plaintiff's] advertising's amount, nature and geographical scope with an eye towards how likely the advertising is to expose a large number of the relevant consuming public to the use of the symbol as a trademark or trade name." Japan Telecom v. Japan Telecom America, 287 F.3d 866, 875 (9th Cir. 2002). Here, Plaintiff offers no persuasive evidence that Plaintiff's advertising efforts have exposed Plaintiff's Mark to a substantial segment of consumers such that individuals will associate eBay's use of the Mark with Plaintiff. Mr. Mazer, Plaintiff's president and sole employee, admits that Plaintiff has no information about the amount expended to promote products bearing the "SmartSearch" mark. As Mr. Mazer stated in his deposition testimony:

> Q.   Do you have any estimation or understanding as to the total amount that [Plaintiff] A.I.S. has spent in terms of its expenditures for promoting or advertising Smart Search products?

1    A.   No.

2    Q.   You can't even give me a – any kind of ballpark

3         range?

4    A.   No, I cannot.

5         . . .

6    Q.   Can you tell me approximately the total amount

7         that [Plaintiff] A.I.S. has spent on an annual basis

8         since the start of 1999 advertising or promoting

9         any of its products that – that use the word Smart

10        Search in any way?

11   A.   No.

12   (Mazer Depo. at 487:5-10, 491:17-24).

13        However, in responding to eBay's interrogatory seeking information as

14   to Plaintiff's expenditures attributable to the advertising and promotion of Plaintiff's

15   products, Plaintiff provided one aggregate amount for each year since 1995 as

16   follows:

17        1995  $63,428.00

18        1996  $70,966.00

19        1997  $37,556.00

20        1998  $37,048.00

21        1999  $35,736.00

22   (eBay's First Set of Interrogatories to Plaintiff, attached to the Declaration of Michael

23   T. Zeller, filed on June 6, 2005, Exh. 10, Bate No. 118:24-27, 123:18-26).

24   Nevertheless, because these gross amount figures are not itemized in such a manner

25   as to help the Court understand how the advertising and promotion expenses

26   contributed to development of secondary meaning, the information has no evidentiary

27   value. Cont'l Lab. Prods., Inc. v. Medax Int'l, Inc., 114 F. Supp. 2d 992, 1003-04

1    (S.D. Cal. 2000) (granting summary judgment to the defendant after rejecting

2    evidentiary value of raw dollar amount of advertising because it did not who how

3    funds were used, nor provided a logical explanation as to how such expenditures

4    contributed to the development of secondary meaning). Here, Mr. Mazer admits that

5    he knows of no corporate records reflecting the requisite itemization, as stated in his

6    deposition testimony:

7         Q.   . . . What kinds of records [has Plaintiff] . . . A.I.S.

8              kept that reflect its advertising and promotional

9              expenditures for the Smart Search products?

10        A.   It – I assume it would be ledgers.

11        Q.   Okay.   Any other category or – or type of

12             document?

13        A.   Not – not that I could – not that I could think of.

14        Q.   And is there a particular way in which a

15             promotional or advertising expense is reflected in

16             the ledger?  In other words, is there some kind of

17             information that would indicate to – to you that it

18             was an advertising or promotional expenditure in

19             particular?

20        A.   I – the answer's I don't know.  It – it might be

21             based on the company.  I don't know – I don't

22             know.

23   (Mazer Decl. at 490:1-118).  Plaintiff does not deny that such ledgers for the alleged

24   expenditures were never produced by Plaintiff. (Zeller Decl. at ¶ 11).

25        To be probative, evidence consisting of advertising and sales statistics

26   must show that Plaintiff's advertising expenditures or sales volumes resulted in "the

27   consuming public's association of the [Mark] exclusively with the plaintiff."

28                                    22

1  Saratoga Vichy Spring Co., Inc. v. Lehman, 491 F. Supp. 141, 151 (D.C.N.Y. 1979).

2  See also HMH Publ'g Co. v. Brincat, 504 F.2d 713, 719 (9th Cir. 1974); Mushroom

3  Makers, Inc. v. R. G. Barry Corp., 441 F. Supp. 1220, 1227 n.25 (S.D.N.Y. 1977),

4  aff'd 580 F.2d 44 (2d Cir. 1978).

5          There is no showing in the present matter that Plaintiff's purported

6  marketing and advertising efforts reached eBay users. Because Plaintiff does not set

7  forth evidence demonstrating that the consuming public associates "Smart Search"

8  with Plaintiff, this factor also weighs heavily in favor of finding no secondary

9  meaning.

10                    (3)   *Manner, Length and Exclusivity of Use*

11         Plaintiff admits that it has never conducted business in eBay's market.

12  In addition, Defendant contends that there is no showing that Plaintiff ever used the

13  Mark in any manner relevant to establish secondary meaning, and that there is a lack

14  of exclusivity, which results in a finding of no secondary meaning. With respect to

15  exclusivity, Defendant points to the use of the Mark by at least thirty-seven (37)

16  organizations–including Microsoft, NASA, the U.S. Military and AT&T–that used

17  the term "SmartSearch" or "Smart Search" for searches. Defendant maintains that

18  more than half of these entities used the Mark in connection with web-based

19  applications. Defendant's proof consists of letters drafted by Plaintiff to unauthorized

20  users of the Mark, requesting such users either enter into a licensing agreement with

21  Plaintiff or cease and desist use of the Mark. (Zeller Decl., Exh. 11). Defendant's

22  proof of a lack of exclusivity is unconvincing. Indeed, there is no showing that

23  Plaintiff permits the unauthorized use of the Mark. In fact, Plaintiff offers the Mazer

24  Decl. to demonstrate that "[t]o the best of my [Mr. Mazer's] knowledge" unauthorized

25  users have ceased using the Mark with the exception of eBay and Ask Jeeves.

26  However, because the Mazer Decl. appears to be based, in part, on speculation, there

27  is no showing that the unauthorized users actually ceased using the Mark. The Court

28                                    23

finds Plaintiff's evidence of exclusivity is neutral at best, neither weighing for or against a finding of secondary meaning.

In sum, this Court concludes, due to the lack of sufficient evidence, that Plaintiff has failed to satisfy its burden of proving secondary meaning in the Mark. As Defendant points out, courts within this district, presented with more evidence of secondary meaning than that offered here, have appropriately granted summary judgment in favor of the defendant. See, e.g., Levi Strauss, 778 F.2d at 1358-59 (upholding summary judgment against owner of a federal registration where Plaintiff failed to establish secondary meaning, despite evidence of substantial sales and advertising); Chrysler, 44 F. Supp. 2d at 1083-84 (granting summary judgment where owner of registered grill design failed to establish secondary meaning in the market where the defendant sold the essentially identical grill screen and covers, despite the plaintiff's substantial advertising of the infringed mark and evidence of deliberate copying); Continental, 114 F. Supp. 2d at 1012 (granting summary judgment for lack of secondary meaning despite evidence of substantial sales, exclusive use of mark for years, and deliberate copying). These cases lend insight and instruction, and tend to show that Plaintiff has failed to meet its burden of proving secondary meaning.

*(4) A Weighing of the Aforementioned Factors*

In considering the factors enumerated in Levi Strauss, the Court concludes that Plaintiff fails to meet its burden of proof that the "SmartSearch" Mark acquired secondary meaning before the year 2000, when Defendant began using the Mark. For the reasons discussed above, the Court agrees with Defendant eBay that each factor weighs in favor of finding no secondary meaning to support a federal trademark infringement cause of action under 15 U.S.C. §§ 1114(a) and 1125(a), or a state unfair competition claim under California Business & Professions Code §§ 17200 et seq.

1           Accordingly, the Court finds that Defendant is entitled to summary

2   judgment as a matter of law with respect to Plaintiff's only causes of action for: (1)

3   Federal Trademark Infringement; and (2) California Unfair Business Practices. In

4   light of the analysis above the Court need not address Defendant's alternative request

5   for partial summary judgment.

6           Moreover, this Court's determination that Defendant is entitled to

7   summary judgment with respect to all of Plaintiff's claims necessarily results in

8   denying Plaintiff's Motion for Summary Judgment.  In the instant matter, Plaintiff

9   does not produce or designate in affidavits, declarations or otherwise, sufficient

10  evidence to adequately support Plaintiff's causes of action.  On issues where, as here,

11  Defendant, as the moving party, do not have the burden of proof at trial, Defendant

12  is only required to show that there is an absence of evidence to support the

13  nonmoving party's case.  See Celotex Corp. v. Catrett, 477 U.S. at 326.  Defendant

14  met its burden of proof.  In response, Plaintiff, as the non-moving party, can defeat

15  summary judgment only if it affirmatively presents specific admissible evidence

16  sufficient to create a genuine issue of material fact for trial.  See Celotex Corp v.

17  Catrett, 477 U.S. at 324.  Plaintiff has failed to do so.  As such, Defendant is entitled

18  to summary judgment as a matter of law with respect to all of Plaintiff's causes of

19  action, and Plaintiff's Motion for Summary Judgment must be denied.

20

21

22

23

24

25

26

27

28                                       25

**III.   CONCLUSION**

Accordingly, this Court:

(1)   **GRANTS** Defendant eBay, Inc.'s Cross-Motion for Summary Judgment, or, in the Alternative, for Partial Summary Judgment; and

(2)   **DENIES** Plaintiff Applied Information Sciences Corp.'s Motion for Summary Judgment.


IT IS SO ORDERED.


DATED:  6/27/05                    DICKRAN TEVRIZIAN
                                  Dickran Tevrizian, Judge
                                  United States District Court

26